Gary D. Shapiro (4554218)
LITTLER MENDELSON, P.C.
900 Third Avenue
New York, NY  10022.3298
212.583.9600

*Admitted Pro Hac Vice:*
Terrence H. Murphy
Erica L. Clarke
LITTLER MENDELSON, P.C.
625 Liberty Avenue, 26th Floor
Pittsburgh, PA  15222
412.201.7600

Attorneys for Defendant,
    VITAMIN SHOPPE INDUSTRIES INC.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JULIO VASQUEZ, Individually and on Behalf of All Other Persons Similarly Situated, | 10-cv-8820 (LTS) |
| Plaintiff, | **DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION OF A COLLECTIVE ACTION** |
| -against- | |
| VITAMIN SHOPPE INDUSTRIES INC., and JOHN DOES #1-10, | ECF Case |
| Defendants. | |

TABLE OF CONTENTS

Page

I.     INTRODUCTION ...................................................................................... 1

II.    FACTUAL BACKGROUND .................................................................... 2

       A.    The Role of Vitamin Shoppe Store Managers ........................................ 2

             1.    Vitamin Shoppe's Management Structure and Retail Operations ............. 2

             2.    Store Manager Job Duties, Training, and Corporate Expectations ........... 3

       B.    Vasquez's View of His Store Manager Position ...................................... 5

       C.    Other Store Managers' Views of Their Positions ................................... 7

III.   ARGUMENT ........................................................................................... 13

       A.    Vasquez Has Not Made the Necessary "Modest Factual Showing"
             That He Is Similarly Situated To a Nationwide Class of Store
             Managers ............................................................................................. 13

             1.    The District Court Has Discretion To Determine Whether
                   Conditional Certification and Collective Action Notice Is
                   "Appropriate" ............................................................................... 13

             2.    The Theory of Vasquez's Overtime Claim Would Require
                   Individualized Proof of the Duties of All SMs Who Became
                   Plaintiffs ...................................................................................... 14

             3.    Vasquez Has Failed To Submit Evidence of a Nationwide
                   "Violation of Law" That Could Be Managed or Tried on a
                   Collective Basis or of Any Other Factual Nexus Between Him and
                   Vitamin Shoppe's Other SMs ........................................................ 16

                   a.    Relying on the "Mere Classification" of SMs as Exempt
                         Without Any Showing That They Are Similarly Situated to
                         Vasquez Is Legally Insufficient ................................................ 16

                   b.    Vasquez's Declaration Concerning His Individual Job
                         Performance Establishes No Factual Nexus With Potential
                         Plaintiffs ............................................................................. 19

             4.    In the Absence of a Common "Illegal" Plan or Policy, Vasquez's
                   Proposed Collective Action Is Unmanageable ................................. 22

IV.   CONCLUSION............................................................................................................. 23

# TABLE OF AUTHORITIES

## Cases

Amendola v. Bristol-Myers Squibb Co., 558 F. Supp. 2d 459 (S.D.N.Y. 2008)....................... 15

Aquilino v. Home Depot, U.S.A., Inc., 2011 U.S. Dist. LEXIS 15759 (D.N.J. Feb. 15, 2011) ................................................................................................................ 23

Bernard v. Household Int'l, Inc., 231 F. Supp. 2d 433 (E.D. Va. 2002)................................... 18

Bramble v. Wal-Mart Stores, Inc., 09-4932, 2011 U.S. Dist. LEXIS 39457 (E.D. Pa. Apr. 11. 2011)........................................................................................................17-19

Colson v. Avnet, Inc., 687 F. Supp. 2d 914 (D. Ariz. 2010) ........................................ 14, 16-18

Eng-Hatcher v. Sprint Nextel Corp., 2009 U.S. Dist. LEXIS 127262 (S.D.N.Y. Nov. 13, 2009)................................................................................................... 14, 19

Francis v. A&E Stores, Inc., No. 06-civ-1638, 2008 U.S. Dist. LEXIS 83369 (S.D.N.Y. Oct. 15, 2008) ................................................................................................ 18

Grace v. Family Dollar Store, Inc., 2011 U.S. App. LEXIS 5800 (4th Cir. Mar. 22, 2011) ........................................................................................................................ 6

Gromek v. Big Lots, Inc., 2010 U.S. LEXIS 134009 (N.D. Ill. Dec. 17, 2010)....................... 21

Guillen v. Marshalls of MA, Inc., 2010 U.S. Dist. LEXIS 121419 (S.D.N.Y. Nov. 16, 2010) ..................................................................................................... 16, 18-20

Hoffman v. Sbarro, Inc., 982 F. Supp. 249 (S.D.N.Y. 1997) ........................................... 14, 19

Hoffman-LaRoche v. Sperling, 493 U.S. 165 (1989)........................................................ 14, 22

Holt v. Rite Aid Corp., 333 F. Supp. 2d 1265 (M.D. Ala. 2004)............................................. 20

Horne v. United Servs. Auto. Ass'n, 279 F. Supp. 2d 1231(M.D. Ala. 2003) ......................... 14

Mike v. Safeco Ins. Co. of Am., 274 F. Supp. 2d 216 (D. Conn. 2003............................... 14, 20

Monger v. Cactus Salon & Spa's LLC, 2009 U.S. Dist. LEXIS 60066 (E.D.N.Y. July 6, 2009)................................................................................................................ 18

Odem v. Centex Homes, No. 3:08-CV-1196-L, 2010 U.S. Dist. LEXIS 9496 (N.D. Tex. Feb. 3, 2010) ................................................................................................. 21

Ramirez v. Yosemite Water Co., 20 Cal. 4th 785 (1999)......................................................... 21

Reich v. Homier Distributing Company, Inc., 362 F. Supp. 2d 1009 (N.D. Ind. 2005) .......................................................................................................................... 21

Severtson v. Phillips Beverage Co., 137 F.R.D. 264 (D. Minn. 1991) ..................................... 22

Sheffield v. Onus Corp., 211 F.R.D. 411 (D. Ore. 2002)......................................................... 23

Williams v. Accredited Home Lenders, Inc., 2006 U.S. Dist. LEXIS 50653 (N.D. Ga. July 25, 2006).................................................................................................... 14

Yaklin v. W-H Energy Servs., Inc., No. C-07-422, 2008 U.S. Dist. LEXIS 36572 (S.D. Tex. May 2, 2008) ................................................................................................ 18

## Statutes

29 U.S.C. § 213(a)(1) ........................................................................................................... 15

29 U.S.C. § 216(b)................................................................................................ 14, 16-17

## **<u>Regulations</u>**

29 C.F.R. § 541 ........................................................................................................... 16

29 C.F.R. § 541.100(a) .............................................................................................. 15

29 C.F.R. § 541.102 .................................................................................................. 15

29 C.F.R. § 541.106(a) .............................................................................................. 16

29 C.F.R. § 541.106(b) .............................................................................................. 16

29 C.F.R. § 541.200(a) .............................................................................................. 15

29 C.F.R. § 541.700(c) .............................................................................................. 16

69 Fed. Reg. 22122 .................................................................................................... 16

**EXHIBIT LIST**

A.     Declaration of James Abbatemarco

B.     Store Manager Bonus Plan

C.     Store Manager Owner Plan

D.     Store Manager Job Description

E.     2009 and 2010 Store Manager Conference Agendas

F.     Store Manager Performance Appraisal Form

G.     Declaration of Julio Vasquez

H.     Declaration of Yesenia Orengo

I.     Declaration of Renee Baxter

J.     Declaration of John Rosa

K.     Declaration of Thad Monroe

L.     Declaration of Daniel Matos

M.     Declaration of Sarah Keller

N.     Declaration of Shelly Anne Remmert

O.     Declaration of Kristie Trobaugh

## I.    __INTRODUCTION__

Plaintiff Julio Vasquez ("Vasquez") alleges he is entitled to overtime pay, based on performance of non-exempt duties, and moves for conditional certification, asserting that hundreds of other current and former Store Managers ("SMs") employed by Vitamin Shoppe Industries Inc. ("Vitamin Shoppe") are "similarly situated" to him.  However, Vasquez has failed to make the "modest factual showing" necessary for conditional class certification in a purported FLSA collective action.  Based only on his Declaration, which is devoid of facts about the duties other SMs actually performed, and a Memorandum that without support declares the standard to be met, Vasquez asks this Court to notify a national class.  The Court should decline to do so because Vasquez has made no showing that he and the potential plaintiffs he purports to represent were victims of any common policy or plan violating the law.

As this Opposition will detail, Vasquez does not contend that any "uniform policy" of Vitamin Shoppe ties together a nationwide class of SMs.  The policies, training and communicated expectations of Vitamin Shoppe contemplate an exempt managerial role for SMs, but Vasquez alleges that *his* job was *different* because it was mostly clerical and customer-oriented.  Vasquez provides no facts to establish that the circumstances of other SMs around the country were like his.  To the contrary, his Complaint includes only an "information and belief" allegation that Vitamin Shoppe had at least 400 SMs with "duties similar to" his, and his Declaration asserts only an assumption that Vitamin Shoppe hired other SMs who, instead of managing, performed "clerical" work like him.

Conditional certification is not automatic, and the failure to provide *any* specific facts about other SMs through Vasquez or some other declarant cannot be enough to meet the "modest

factual showing" standard, even though it is lenient.  A "modest" showing requires some facts, but there are none here.

This factual vacuum is particularly glaring where the claim is that Vitamin Shoppes' SMs performed non-exempt duties contrary to the employer's requirements.  Whether an employee is exempt requires a fact-intensive analysis of the time spent performing managerial duties, particularly where retail stores are involved.  Vasquez's motion provides no facts to support the claim that other SMs had jobs which departed from Vitamin Shoppe policy, as Vasquez claims his did.

Because Vasquez presents nothing but his uncorroborated description of his personal work experience at one store, he has failed to meet his burden, and his motion for conditional certification of a nationwide class should be denied.

## II.   FACTUAL BACKGROUND

### A.   The Role of Vitamin Shoppe Store Managers

1.   Vitamin Shoppe's Management Structure and Retail Operations

Vitamin Shoppe is a leading specialty retailer and direct marketer of nutritional products, ranging from vitamins and minerals to nutritional supplements, herbs, sports nutrition formulas, homeopathic remedies, and health and beauty aids.  (Ex. A, Abbatemarco Decl. ¶ 4.)  Vitamin Shoppe has 500 stores in 40 states[1] and divides its operations into four Regions.  Each Region has from seven to 11 Districts and from one to six Markets.[2]  (Id. ¶ 5.)  A District includes from 10 to 16 stores, whereas a Market contains two to nine stores.  (Id. ¶ 8.)  In each District, a District Manager (DM) oversees and supports 10-16 SMs, who manage local store operations.

---

[1] The stores in nine states are operated by VS Direct, Inc. a subsidiary of Vitamin Shoppe.  (Id. ¶ 6.)

[2] Presently, Region 1 has 11 Districts and 1 Market; Region 2 has 8 Districts and 6 Markets; Region 3 has 7 Districts and 3 Markets; and Region 4 has 10 Districts and 2 Markets.  (Id. ¶ 7.)

(Id. ¶ 9.)

Each Vitamin Shoppe store employs one SM and, depending on sales volume, location and customer base, a varying number of Assistant Store Managers (ASMs) and full- and part-time Sales Associates,[3] all of whom report to the SM.  (Id. ¶ 10.)  SMs are paid on a salary basis and, under a Store Manager Bonus Plan, are eligible for a monthly bonus based on store sales and financial performance.[4]  (Id. ¶ 12; Ex. B, SM Bonus Plan.)  SMs also are eligible for an additional, annual bonus of up to $25,000 under a Store Manager Owner Plan, based on success in increasing store sales.  (Ex. A, Abbatemarco Decl. ¶ 13; Ex. C, SM Owner Plan.)  The purpose of the SM Owner Plan is to reward SMs who demonstrate a commitment to stay in their store and grow their business.  (Ex. C, SM Owner Plan.)  In short, the better a store performs, the more its SM can earn.  (Ex. A, Abbatemarco Decl. ¶ 14.)

2.    Store Manager Job Duties, Training and Corporate Expectations

Vitamin Shoppe's corporate expectations for the SM position are set out in its SM Job Description, which provides:

> The Store Manager (SM) *leads and manages a store to meet or exceed financial goals* in a manner that is consistent with our health and wellness culture, customer service focus and merchandising standards.  The Store Manager *plans and allocates resources in order to maximize store profitability and efficiency*. The SM *recruits, trains and builds* a diverse, knowledgeable and motivated team that is dedicated to our vision and mission. The Store Manager *models, coaches and teaches* the team to understand our Brand Promise (our commitment to our customers),

---

[3]  A limited number of Sales Associates are also designated Key Holders.  As the title denotes, these Associates are given keys to the store and have additional responsibilities with regard to opening and closing the store.  The Key Holder may also function as the Manager on Duty (MOD) when neither the SM or ASM are in the store (*e.g.*, on lunch breaks).  (Id. ¶ 11.)

[4]  Although ASMs and Key Holders are also eligible for a bonus under this plan, the SM reaps the greatest financial reward for the store's performance.  The SM receives 50% of the bonus allocated to the store.  The other 50% is equally divided among the ASMs and Key Holders. (Ex. B, SM Bonus Plan.)

> and all four Critical Success Factors (the activities that deliver the
> Vitamin Shoppe vision and mission).

(Ex. D, SM Job Description, Job Summary (emphasis added).)

Consistent with this description, Vitamin Shoppe expects SMs to manage their respective stores and staff as their primary duty.  (Ex. A, Abbatemarco Decl. ¶ 15; Ex. D, SM Job Description.)  ASMs, Associates and Key Holders report directly to the SM.  (Ex. D, SM Job Description, Direct Reports.)  The essential functions of the SM position include recruiting, interviewing, hiring, training and developing ASMs and Associates; coaching and counseling team members on performance issues and taking corrective action as necessary; making recommendations regarding promotions, pay increases and termination; planning and directing the work of subordinates to maximize each staff member's skill set; creating work schedules; completing annual performance evaluations of ASMs and Associates; executing and maintaining the company's operational, promotional and merchandising standards; handling employee grievances and customer complaints; protecting and maintaining company assets; managing the store's expense within a budget; and achieving or exceeding all financial and sales goals established for the store.  (Ex. A, Abbatemarco Decl. ¶ 16; Ex. D, SM Job Description.)

SMs receive training on how Vitamin Shoppe stores operate and management expectations.  (Ex. A, Abbatemarco Decl. ¶ 17.)  It addresses such topics as ensuring store safety, managing the schedule and employee payroll, sales reporting, tracking applicants and new hires, managing inventory, counseling and training associates, ensuring the highest level of customer service, responding to emergencies, and managing employee attendance.  (Id.)  All SMs must attend an annual, five-day conference where they participate in over 20 separate managerial training sessions plus a day-long trade show where they receive the latest product information from over 150 Vitamin Shoppe vendors.  Neither ASMs nor Associates attend this conference.

(Id. ¶ 18; Ex. E, 2009 and 2010 SM Conference Agendas.)

In their annual performance appraisals, SMs are evaluated on leadership and management skills, and by how they have contributed to the success of their store's operations.  (Ex. F, SM Performance Appraisal.)  More specifically, they are evaluated on store sales and financial performance, which includes meeting or exceeding forecasts, limiting shrink, keeping store expense within budget and inventory accuracy.  They also are evaluated on market activation activities and generation of new customers, and the turnover and promotional rates of their staff. (Ex. A, Abbatemarco Decl. ¶ 19; Ex. F, SM Performance Appraisal.)

## B.   Vasquez's View of His Store Manager Position

The only declaration offered by Vasquez is his own.  (Ex. G, Vasquez Decl.)  In it he parrots the allegations in his Complaint that he was a mere "clerk," but his Declaration largely belies his contention.  (Id. ¶ 1.)

While Vasquez claims to have spent significant time stocking shelves, performing cashier duties and providing customer service, his Declaration also recites that his job responsibilities included management duties such as "opening and closing the store, security, responding to customer complaints, assigning clerks to the cash register or floor, and responding to cashier's requests to approve the voiding of charges and returns."  (Id. ¶¶ 20, 28.)

On days he opened the store, Vasquez's Declaration recites that he opened the security gate, disarmed the alarm, opened the cash registers, counted out money for the registers, counted the money in the safe, checked the computer to confirm transmittal of daily sales reports, inspected the store for cleanliness and safety, and corrected any problems in these areas, checked email from the DM and stocked newly-received product onto the shelves.  (Id. ¶ 17.)  He also

processed shipments, entered information into the computer and performed inventory counts. [5] (Id. ¶¶ 18-19.)

Although Vasquez says he "received no special training," he also states that he attended meetings once per month that were attended *only* by Store Managers, at which the SMs discussed "sales goals," individual store sales and financial performance, "new planograms and sales strategies."  (Id. ¶¶ 11-12.)

Vasquez says in his Declaration that his DM provided budgets for both payroll and supplies, but never says he was not responsible for managing payroll and expenses to that budget.  (Id. ¶¶ 13-14, 30.)  Vasquez also says he set the schedules for his ASMs and Associates, purportedly "subject to the approval" of his DM.  (Id. ¶¶ 25-26.)  But he does not allege that the DM ever overrode his scheduling decisions.  Vasquez denies that he hired or fired anyone as SM (id. ¶ 27), but Vitamin Shoppe records confirm that he hired Yafreisy Liriana as a Sales Associate in July 2008 and Mercedes Garcia as a Key Holder in September 2008.  Vasquez also discharged or recommended the discharge of Monico Ortiz Alcantara, Associate, in June 2008. (Ex. A, Abbatemarco Decl. ¶ 20.)

On days he opened the store at 7 a.m., Vasquez states that he worked alone for three hours.  (Ex. G, Vasquez Decl. ¶¶ 15, 21.)  His Declaration does not suggest that he did not spend the remaining hours managing his staff.  Yesenia Orengo, an ASM who worked under Vasquez, confirms that he was "in charge of running the store," including assigning daily tasks to employees as well as  hiring, evaluating performance, discipline and staff development.  (Ex. H,

---

[5] These duties are not inconsistent with Vasquez's concurrent performance of managerial duties. See Grace v. Family Dollar Store, Inc., 2011 U.S. App. LEXIS 5800, at *21 (4th Cir. Mar. 22, 2011) ("[w]hile [plaintiff] catalogs the non-managerial jobs that she had to do, claiming that they occupied most of her time, she does so without recognizing that during 100% of the time, even while doing those jobs, she was also the person responsible for running the store. Indeed, there was no one else to do so, and it cannot be rationally assumed . . . that the store went without

Orengo Decl.)  Even when Vasquez was "helping out, he was always supervising the work of the other employees in the store."  (Id. ¶ 20.)  Vasquez was the "leader" and the ultimate decision maker. (Id. ¶ 21.)

Vasquez has offered no evidence from even one other current or former SM to support his position that SMs are just "clerks." He speculates that "Defendant hired other individuals like me with the title of Store Managers [sic], who also were not acting as managers and did not have the right to hire and fire . . . *Upon information and belief* I worked for Defendant with at least 400 other similar clerk employees with the title of Store Manager ("SM Clerks") who had duties similar to myself."  (Ex. G, Vasquez Decl. ¶¶ 34-37 (emphasis added).)  Absent from his Declaration is the identification by name of *even one* other SM who performed mere "clerk" duties.[6]

Since Vasquez's Declaration presents only his view of his job as an SM, coupled with his speculation that he "believes" others are like him, all that can be discerned from it is that his individual experience as an SM, as he describes it, was not consistent with Vitamin Shoppe's policies, training and expectations.

## C.      Other Store Managers' Views of Their Positions

Contrary to Vasquez's Declaration, Vitamin Shoppe has submitted evidence that SMs in various regions, in Vasquez's district, and even the SM who replaced Vasquez in New York's Store No. 721 regularly engage in exempt managerial functions, consistent with Vitamin Shoppe's policies, training and expectations.

Renee Baxter, SM in a Peabody, Massachusetts store, received three months of training

---

management 99% of the time").

[6] Vasquez identifies three other SMs by first name only to allege that they, like him, were not paid overtime for hours worked in excess of 40 per week (id. ¶ 40) – a fact which is not in dispute.

to prepare for the SM role.  (Ex. I, Baxter Decl. ¶¶ 2-9.)  She says the SM role carries "much more responsibility" than her prior ASM role – "[w]here an ASM is only responsible for what is happening at the one shift that the ASM is working, a Store Manager is ultimately responsible for everything that happens in the Store, at any time."  (Id. ¶ 12.)  Baxter manages two ASMs, one Key Holder and four Associates, and exercises discretion in delegating more responsibilities to one ASM than the other.  (Id. ¶¶ 13-18.)  When the need arose to hire more Associates in her store, she made the recommendation to her DM to increase the staffing and he agreed.  (Id. ¶ 19.)

Baxter's is a $2 million store and she spends significant time on market activation activities.  She recently organized a promotional event where several New England Patriots players came to the store for an autograph signing and charity raffle.  She conceives, plans and organizes these types of events.  (Id. ¶¶ 20-30.)

Baxter devotes significant time to training and developing her staff.  (Id. ¶¶ 31-33, 91-94.)  She prepares the store schedules and a Daily Planning Calendar which assigns specific duties to each employee throughout the week.  (Id. ¶¶ 34-39, 48.)  Although the DM provides a budget for payroll hours, Baxter states that "it is up to me to determine, from those hours . . . what employees will be working what shifts during each workweek."  (Id. ¶¶ 40-47.)

According to Baxter, she spends 75 percent of her time "overseeing the Store in general.  When I am in the Store, I am always aware of what is going on in the Store. . . . I will sometimes help out with other tasks in the Store, but still, I will be aware of what is going on."  (Id. ¶¶ 49-52.)  Baxter continually supervises and coaches her staff.  She alone is responsible for hiring, employee discipline and evaluations.  (Id. ¶¶ 53-68, 70-76, 78-90.)   She makes recommendations for promotion, which routinely are approved.  (Id. ¶¶ 95-101.)  She also is responsible for customer satisfaction, legal compliance and store security, and often receives

calls at home and after hours to address such matters.  (Id. ¶¶ 104-110.)  Baxter's DM visits her store once per month and is not involved in its day-to-day operations.  (Id. ¶¶ 111-116.)

John Rosa replaced Vasquez as the SM for Store 721 in New York City.  (Ex. J, Rosa Decl. ¶ 2.)  Rosa attests that as SM "I am ultimately responsible for running the store.  It is my job to make sure the store is running smoothly and efficiently.  It's a lot of responsibility."  (Id. ¶ 3.)  Rosa received specialized training to become an SM.  (Id. ¶ 4.)  He manages a staff of one ASM, one Key Holder and three Associates, and supervises and directs their work.  (Id. ¶ 5.)

Each week, Rosa creates a Daily Planning Calendar, assigning specific tasks to his staff members based on their strengths.  (Id. ¶¶ 6-8.)  He makes it a priority to train and develop his employees, and conducts their annual performance appraisals.  (Id. ¶¶ 9-11.)  Rosa says:  "Since I am in charge of my store, I am constantly supervising my employees when I am working on the floor or dealing with customers.  I am always observant and actively listening to what is going on in my store."  (Id. ¶ 13.)  Because he is "responsible for the success of [his] store," he focuses on market activation activity to grow his store's customer base.  (Id. ¶ 14-16.)  Even when not at work, ASMs call or text Rosa to provide information on the store's operations.  (Id. ¶ 17.)

Rosa is responsible for scheduling his staff within the payroll budget set for his store.  He tries "to schedule employees so that I have my best employees working the most."  (Id. ¶¶ 18-20.)  Rosa is also responsible for employee discipline, grievances, hiring, promotions and training.  He has authority to fire, but has not had to discharge anyone since becoming SM.  (Id. ¶¶ 21-32.)

Thad Monroe manages a store in Brooklyn, New York, describes his managerial duties as "very extensive" and says:  "I am responsible for my employees, the proper functioning of the store, and customer satisfaction."  (Ex. K, Monroe Decl. ¶¶ 2-7.)  As SM, Monroe has hired or

rehired six Associates, promoted two and currently manages a staff of seven.  (Id. ¶¶ 8-15.)  He

sets employee work schedules and assigns their duties on a Daily Planning Calendar.  (Id. ¶¶ 16-

17.)  He is responsible for evaluating their performance and discipline where appropriate.  (Id. ¶¶

19-20.)  He is responsible for operating his store within a budget, deciding how to spend

budgeted funds.  (Id. ¶ 21.)  Monroe attests:

> I believe being Store Manager is an enormous responsibility.  I am
> running the store 100% of the time.  If I had to split up my time
> based on manual versus non-manual work, I would say that 75% of
> my work is non-manual and 25% of my work is manual.
> Regardless of whether I'm doing manual or non-manual work, I
> am running my store and directing my employees 100% of the
> time.

(Id. ¶ 22.)  Monroe understands that he is ultimately responsible for the store's performance.  (Id.

¶ 23.)

Daniel Matos is SM of a Merrick, New York store.  (Ex. L, Matos Decl. ¶ 3.)  His

responsibilities are "driving the business, meeting sales goals, [and] building a strong staff

through good hiring and training."  (Id. ¶ 4.)  He "manage[s] the entire staff, the payroll, the

budget, and the store.  My job duties include ensuring the staff is educated.  If the sales drop, it is

my job duty as store manager to find out why and try to correct."  (Id. ¶¶ 4, 18-20.)  Matos

spends most of his time supervising, training, mentoring and directing his employees.  He spends

very little time on manual work.  He assigns specific tasks to his employees, taking into account

each employee's experience and knowledge.  (Id. ¶¶ 6, 9-15.)

Matos hired his current staff of six employees and has promoted some of them.  His

recommendations to discharge have routinely been followed.  (Id. ¶¶ 7-8.)  He is responsible for

scheduling, employee discipline and performance appraisals.  (Id. ¶¶ 16-17, 21.)  Matos' DM

visits his store one or twice per month and is not involved in its day-to-day operations.  (Id. ¶

22.)  Matos attends special training for SMs and trains other SMs.  (Id. ¶¶ 23-24.)  He views himself as the "Captain of the ship" and says that "the experience I bring is critical.  There is corporate direction involved in running the store but there is room for creativity and ingenuity from the Store Manager to make the store successful. . . . Not anyone can be a Store Manager."  (Id. ¶ 25.)

Sarah Keller and Shelly Anne Remmert are SMs of Lewisville, Texas and Webster, Texas stores, respectively.  (Ex. M, Keller Decl. ¶¶ 2-3; Ex. N, Remmert Decl. ¶¶ 2-3.)  Keller often travels to train other SMs and manages a staff of five in her own store.  (Ex. M, Keller Decl. ¶¶ 4, 6.)  She says she "is completely responsible for running every aspect of my store" including customer satisfaction, personnel, merchandising and marketing.  (Id. ¶¶ 7-12, 16, 23.)  Remmert states:  "My primary responsibility is to run the business as if I am the owner of the store.  100% of the time that I spend working, I am supervising the employees that report directly to me,"  (Ex. N, Remmert Decl. ¶¶ 4-5.)

Keller describes work scheduling as a "hair pulling task" because of all of the "changing variables" including employee availability, anticipated customer flow and other operational factors.  (Ex. M, Keller Decl. ¶¶ 13-14.)  Remmert finds the volume of paperwork she must complete to be taxing.  (Ex. N, Remmert Decl. ¶ 5.)

Keller and Remmert are responsible for hiring, promoting, training, performance evaluations, discipline and firing.  (Ex. M, Keller Decl. ¶¶ 16-20, 25; Ex. N, Remmert Decl. ¶¶ 6-7, 9, 11.)  Remmert fired one employee when he failed to improve after she put him on a Performance Development Plan (PDP).  (Ex. N, Remmert Decl. ¶ 6.)  Keller micromanages her staff.  As an example "if a young muscular male customer walks in, I will encourage one of my younger employees to approach him believing that the customer will feel more comfortable

talking to someone similar.  Similarly, if a female customer arrives looking for supplements to assist with menopause, I will send a female employee to assist her."  (Ex. M, Keller Decl. ¶¶ 21-22, 24.)

Kristie Trobaugh is the SM at the Pineville, North Carolina store.  As this was a new Vitamin Shoppe store, Trobaugh prepared for its opening by working and training for four months at an existing store.  (Ex. O, Trobaugh Decl. ¶ 2.)  She spent two more months interviewing, hiring and training her staff, and conducting market activation activities.  (Id. ¶ 3.)  Trobaugh currently is SM of her store and functions as a Field Training Manager, training new SMs.  (Id. ¶ 4.)

Trobaugh's DM visits her store once per month, which she takes as an assessment of her performance.  (Id. ¶ 6.)  She participates in a weekly conference call with other SMs in her district where they receive corporate updates from the DM, report on store performance, and discuss sales and financial goals and sales strategies.  (Id. ¶ 7.)

Although Trobaugh consults with her DM on personnel decisions, she ultimately is responsible for hiring, promotions, discipline and performance appraisals.  On firing, the DM "always seeks out and relies on [her] recommendations."  (Id. ¶¶ 9, 11, 24-26.)  Trobaugh believes the development of her staff is important and "that [her] ability to train and develop internal candidates to move up in the Company demonstrates that I am a good Store Manager."  She explains that "[b]y ensuring that I have a strong bench, I am able to make sure that I have a team of people that I can promote internally, should one of my employees resign or should I have to terminate someone."  (Id. ¶¶ 10, 22.)  During her time as SM, she has hired about 25 employees and promoted six.  (Id. ¶ 11.)  Her recommendations on employees pay routinely are approved.  (Id. ¶ 12.)

Trobaugh affirms that "All employees in my Store report to me, and I direct their work. . . . During the "meat" of any given day, I supervise at least two employees." (Id. ¶ 13.) She gives her staff written "to do" lists on a "Daily Activities" sheet. (Id. ¶ 17.) She also handles all scheduling and self-describes a "brilliant scheduling system" that she has developed for her store, which allows her to assure management coverage and schedule according to the strengths of her team members. (Id. ¶¶ 14, 16.) If exceeding the budgeted payroll hours becomes necessary, Trobaugh simply "explains the business reason that I need to use more labor hours, and [the DM] always respects, and ultimately approves, my business decisions as they relate to scheduling and making sure that my Store is covered." (Id. ¶ 15.)

Trobaugh sums up her experience as SM as follows:

> I am responsible for all facets of my store. I run the store, which includes all the responsibilities that go along with it — hiring, training, coaching employees; scheduling employees; delegating work to employees; paperwork and reports, including scheduling, LP [loss prevention] audits, and disciplinary and performance-related paperwork for employees, and Daily Planning Calendars (DPCs); and resetting the store and completing the shipment to shelf process (tasks which are handled by my staff and I together). I am the queen of multi-tasking because I am constantly juggling these and other managerial tasks, assisting on the salesfloor, and ensuring everyone is doing what they're supposed to be doing.

(Id. ¶ 5; see also ¶¶ 18-21. ) She concludes that "[o]verall, being a Store Manager involves a lot of responsibility. I have the ultimate responsibility for absolutely everything that concerns my Store, including it's success, whether I am at the store or not." (Id. ¶ 27.)

### III.    ARGUMENT

**A.    Vasquez Has Not Made the Necessary "Modest Factual Showing" That He Is Similarly Situated To a Nationwide Class of Store Managers.**

    1.    The District Court Has Discretion To Determine Whether Conditional Certification and Collective Action Notice Is "Appropriate."

A party may bring a collective action under the FLSA on behalf of other "similarly

situated" employees.  29 U.S.C. § 216(b).  District courts "have discretion, *in appropriate cases*

. . . to implement" the collective action mechanism under Section 216(b) "by facilitating notice

to potential plaintiffs."  Hoffman-LaRoche v. Sperling, 493 U.S. 165, 169 (1989) (emphasis

added).  Thus, a district court may decide whether conditional certification and notice are

appropriate.  See Horne v. United Servs. Auto. Ass'n, 279 F. Supp. 2d 1231, 1233 (M.D. Ala.

2003) ("[t]he power to authorize notice must, however, be exercised with discretion and only in

appropriate cases"); Mike v. Safeco Ins. Co. of Am., 274 F. Supp. 2d 216, 220 (D. Conn. 2003)

("the court must be satisfied that there is a basis to conclude that questions common to a

potential group of plaintiffs would predominate a determination of the merits").

Common issues of law and fact are necessary because without them "it is doubtful that §

216(b) would further the interests of judicial economy, and it would undoubtedly present a ready

opportunity for abuse."[7]  Horne, 279 F. Supp. 2d at 1234.  Accordingly, "conditional certification

at the first stage is by no means automatic."  Colson v. Avnet, Inc., 687 F. Supp. 2d 914, 925, 29-

30 (D. Ariz. 2010).

     2.     The Theory of Vasquez's Overtime Claim Would Require
            Individualized Proof of the Duties of All the SMs Who Became
            Plaintiffs.

To proceed to the notice stage requires evidence of a factual nexus binding the named

plaintiff and the potential class members together as victims of an alleged unlawful policy or

practice.  Hoffman v. Sbarro, Inc., 982 F. Supp. 249, 261 (S.D.N.Y. 1997).  Evaluating

Vasquez's request for conditional certification and notice therefore requires evaluation of

---

[7] In cases with potentially large numbers of litigants, courts must carefully scrutinize a plaintiff's claim that notice would actually serve the interests that support judicial intervention.  See Eng-Hatcher v. Sprint Nextel Corp., 2009 U.S. Dist. LEXIS 127262, at *16-17 (S.D.N.Y. Nov. 13, 2009) (size and scope of requested class certification impacts factual showing that plaintiff must make); Williams v. Accredited Home Lenders, Inc., 2006 U.S. Dist. LEXIS 50653 (N.D. Ga. July 25, 2006) (applying similarity requirement with "some rigor" in case involving "as many as

whether he has presented a plausible theory for adjudicating the FLSA violation he alleges on behalf of himself and Vitamin Shoppes' SMs.  See Amendola v. Bristol-Myers Squibb Co., 558 F. Supp. 2d 459, 467 n.9 (S.D.N.Y. 2008) (proper to scrutinize merits based on record to extent necessary to address plaintiff's notice motion). Vasquez contends his duties were not exempt under the FLSA, 29 U.S.C. § 213(a)(1), so his claim will depend on whether the record reflects that he was employed in a bona fide executive or administrative capacity, or combination of both.  Id.  For a collective action, the record would have to allow determination of whether his and the other SMs' primary duty consisted of the management of a recognized retail subdivision and included customarily directing the work of two or more employees and having authority to make recommendations regarding employees' change in status, or alternatively, whether their primary duty was non-manual work related to the management of Vitamin Shoppe's business, including the exercise of discretion and independent judgment.  See 29 C.F.R. §§ 541.100(a), 541.200(a).

In this regard, "[d]etermining whether an employee is exempt is extremely individual and fact-intensive, requiring 'a detailed analysis of the time spent performing [managerial] duties' and 'a careful factual analysis of the full range of the employee's job duties and responsibilities.'"  Diaz v. Electronics Boutique of Am., Inc., No. 04-cv-0840, 2005 U.S. Dist. LEXIS 30382, at *10 (W.D.N.Y. Oct. 17, 2005) (internal citations omitted); see 29 C.F.R. § 541.102 ("exempt status of any particular employee must be determined on the basis of whether *the employee's* salary and duties meet the requirements of the regulations") (emphasis added). This is particularly true in a retail setting, where FLSA regulations recognize that even *assistant* managers may spend more than half their time performing non-exempt work, but still correctly

---

1,000 potential plaintiffs").

be classified as exempt.[8]  See 29 C.F.R. § 541.700(c); 29 C.F.R. § 541.106(b) ("assistant

manager can supervise employees and serve customers at the same time without losing the

exemption . . . exempt employee can also simultaneously direct the work of other employees and

stock shelves").  The FLSA regulations also provide:  "Whether an employee meets the

requirements of [the executive exemption] when the employee performs concurrent duties *is

determined on a case-by-case basis*."  29 C.F.R. § 541.106(a) (emphasis added).  Thus, to

establish the right to conditional certification and notice, Vasquez must show that

representational proof will answer these common questions of fact and law as to Vitamin Shoppe

SMs.  See Guillen v. Marshalls of MA, Inc., 2010 U.S. Dist. LEXIS 121419, at *5 (S.D.N.Y.

Nov. 16, 2010) ("at this preliminary stage, the focus of the inquiry is not on whether there has

been an actual violation of law but rather on whether the proposed plaintiffs are similarly

situated under 29 U.S.C. § 216( b) with respect to their allegations that the law has been

violated").

　　　　3.　　Vasquez Has Failed To Submit Evidence of a Nationwide
　　　　　　　"Violation Of Law" That Could Be Managed or Tried
　　　　　　　on a Collective Basis or of Any Other Factual Nexus Between
　　　　　　　Him and Vitamin Shoppes' Other SMs.

　　　　　　a.　　Relying on the "Mere Classification" of SMs as Exempt
　　　　　　　　　Without Any Showing That They Are Similarly Situated to
　　　　　　　　　Vasquez Is Legally Insufficient.

Vasquez appears to argue that Vitamin Shoppe's mere classification of its SMs as exempt

is enough to support conditional certification.  See Pl. Mem. at 4, 8.  It is not.  In Colson, 687 F.

Supp. 2d at 926, the court said:

　　　　　　[T]he mere classification of a group of employees – even a large or
　　　　　　nationwide group – as exempt under the FLSA *is not by itself*

---

[8]  See also 69 Fed. Reg. 22122 (Apr. 23, 2004) (codified at 29 C.F.R. § 541) (discussing exempt
status of retail assistant managers who spend majority of time on nonexempt work).

> *sufficient* to constitute the necessary evidence of a common policy, plan, or practice that renders all putative class members as "similarly situated" for § 216(b) purposes.  If it were, in every instance where an employer is accused of misclassifying a large group of employees, the district court would then somehow be required to order collective action notification, irrespective of the quality or quantity of evidence that had been produced in the form of declarations and supporting exhibits.  Such a rule would run counter to the long established law governing § 216(b) actions, which states that whether an employee has been properly exempted under the FLSA necessitates a fact specific inquiry.

(emphasis added).

Further, in Colson, 687 F. Supp. 2d at 927, plaintiff's evidence consisted of just three declarations with exhibits, setting forth her opinions, discussions with unidentified co-workers, unspecified "company communications" and undocumented interactions with other employees. According to the court, plaintiff's declaration had "some value" regarding her own experience, but otherwise was "filled with statements that lack personal knowledge." Id.  Such evidence did "not come close to establishing a sufficient evidentiary basis" to conclude, even preliminarily, that the plaintiff was similarly situated to a nationwide class.  Id.

In Bramble v. Wal-Mart Stores, Inc., 09-4932, 2011 U.S. Dist. LEXIS 39457 (E.D. Pa. Apr. 11, 2011), the plaintiffs alleged that Wal-Mart improperly classified and compensated its Asset Protection Coordinators (APCs) as exempt.  The court denied a motion for conditional certification of a nationwide class for much the same reasons as in Colson.  The plaintiffs' testimony was "largely specific to their own experiences at Wal-Mart," did not support that the responsibilities they performed "were similar to those actually performed by other APCs, either at their stores or at other stores nationwide" and did "not provide even modest evidence beyond their own speculation" that their job duties were like other APCs.  Id. at *8, 22.  Such proof failed to make provide a "basic or modest factual showing that the proposed recipients of opt-in notices are similarly situated to the named Plaintiff[s]."  The court said that, although the

conditional certification burden is modest, it is "'not nonexistent and the factual showing, even if modest, must still be based on some substance.'"  Id. at *16-17 (citing Guillen, 2010 U.S. Dist. LEXIS 121419, at *9.)

Vasquez has made less of an evidentiary showing than the Colson or Bramble plaintiffs. He tacitly concedes that he has no *actual knowledge* about other SMs' duties and responsibilities when he asserts only his "belief" that they were similar to his.  Vasquez's "beliefs" do not justify nationwide notice.[9]  See Francis v. A&E Stores, Inc., No. 06-civ-1638, 2008 U.S. Dist. LEXIS 83369, at *8 n.1 (S.D.N.Y. Oct. 15, 2008) (where plaintiff "provided nothing beyond conclusory statements that other employees were similarly situated," certification not appropriate); Monger v. Cactus Salon & Spa's LLC, 2009 U.S. Dist. LEXIS 60066, at*5-6 (E.D.N.Y. July 6, 2009) (statements that plaintiffs "believed" others were subject to same policies insufficient to expand class beyond plaintiffs' store); Yaklin v. W-H Energy Servs., Inc., No. C-07-422, 2008 U.S. Dist. LEXIS 36572, at *9 (S.D. Tex. May 2, 2008) ("boilerplate" language that affiant "believed" other employees were similarly situated insufficient to establish nationwide class); Bernard v. Household Int'l, Inc., 231 F. Supp. 2d 433, 436 (E.D. Va. 2002) (rejecting statements relating to alleged practices where "prefaced with phrases such as, 'It is my understanding' and 'I believe that'").  As in Colson, Vasquez's claim that he is similarly situated to a nationwide class of Vitamin Shoppe SMs is simply "unsupportable."  687 F. Supp. 2d at 929.

---

[9] Section 2.E. of this Court's Individual Practices Rules states that **"**[e]videntiary support, in admissible form, of all factual assertions relied upon in support" of a motion must be filed with the motion, and that "*assertions of material factual matters 'on information and belief' and the like are generally insufficient to establish factual matters*." (Emphasis added.)

b.      Vasquez's Declaration Concerning His Individual Job
Performance Establishes No Factual Nexus With Potential
Plaintiffs.

Conditional certification and notice must be premised on a "factual nexus" between Vasquez and the proposed plaintiffs showing that they are all victims of a common policy or plan violating the law.  Diaz,  2005 U.S. Dist. LEXIS 30382, at *10 (quoting Hoffman v. Sbarro, 982 F. Supp. 249, 261 (S.D.N.Y. 1997)).

Vasquez points to no corporate policy supporting his claim.  He cites no policy requiring SMs to spend time performing "clerical" tasks or prohibiting them from exercising managerial authority.  He asserts only that *he* performed primarily non-exempt work, despite what Vitamin Shoppe expects and intends SMs to do.  See Bramble, 2011 U.S. Dist. LEXIS 39457, at *19-20 (plaintiffs "do not point to a job description that says that [they] are required to perform non-exempt tasks for a majority of their working hours" but instead argue "that as a matter of fact, rather than of formal job description, they are performing non-exempt duties for the majority of their working hours").  Because this is Vasquez's only substantive contention, no common thread ties together a nationwide class of SMs, and proof of liability would turn on evidence of what each SM does or did on a daily basis and how that differs from what is in Vitamin Shoppe's policies and job descriptions.  See Eng-Hatcher, 2009 U.S. Dist. LEXIS 127262, at *10-11 (denying conditional certification where plaintiff argued that, despite FLSA-compliant compensation and overtime policies, retail defendant had "nationwide *de facto* policy" where individual managers compelled employees to work uncompensated overtime).

This Court has denied conditional certification where the claim is that retail managers were not actually permitted to perform the supervisory duties their employer's policies contemplated.  In Guillen, this Court rejected conditional certification of a nationwide class of

assistant store managers ("ASMs") at Marshalls stores, based on allegations much like those Vasquez makes.  2010 U.S.  Dist. LEXIS 21419, at *3-5. The Marshalls' job description indicated that ASMs were responsible for day-to-day store management and overseeing cash, office, maintenance and backroom functions, but the plaintiff alleged "the majority of his time as an [ASM] was spent performing non-exempt tasks." Id. at *5-7.  The Court concluded that this was "very different from an attack on a common formal policy." Id. at *17.  To certify a nationwide class, plaintiff would have to show "that he and the other ASMs were similarly situated with respect to the claim that they were required to perform non-managerial job duties in contravention of the formal job description." Id. at *14.  The court found the affidavits from five ASMs claiming this allegedly illegal activity at nine of 820 Marshalls stores "extremely thin" and denied certification.  Id. at *18-19.

     In Holt v. Rite Aid Corp., 333 F. Supp. 2d 1265, 1270 (M.D. Ala. 2004), plaintiffs sought conditional certification of a collective action, alleging they were similarly situated to store managers and assistant managers.  They claimed that, while their job descriptions contained exempt duties, they spent the most of their time on non-exempt duties, such as running the cash register or performing janitorial duties.  Id. at 1271.  The court denied certification, explaining:

> [T]his case is not a case where janitors are being classified as exempt executives. *Evidence before the court of the formal, written job descriptions of store managers and assistant store managers contains many managerial tasks.  It is only once the Plaintiffs' testimony as to the degree to which other tasks are performed that the application of the exemption becomes questionable.*  Therefore, . . . because the application of the executive exemption for merits purposes will require a fact-intensive determination, it appears to the court that the similarly situated inquiry also requires an examination of day-to-day tasks.

Id. (emphasis added).  See also Mike, 274 F. Supp. 2d at 220-21 (conditional certification denied on ground that determination as to exempt status would require "an ad hoc inquiry for each

proposed plaintiff" where plaintiff disavowed common job description, claiming he performed primarily non-exempt duties, contrary to terms of description); Gromek v. Big Lots, Inc., 2010 U.S. LEXIS 134009, at *13 (N.D. Ill. Dec. 17, 2010) (conditional certification of class of retail ASMs denied despite 15 declarations from current and former ASMs saying they performed same job functions as plaintiff, "where a determination of every individual's exempt or non-exempt status 'requires a detailed factual analysis of his daily activities and responsibilities'").[10]

Here, other SMs, including those employed in the same district and even the same store where Vasquez worked, have provided declarations indicating that they performed managerial duties consistent with Vitamin Shoppe's policies, training and expectations. See Section II.C., supra. Vasquez points to no "standardized corporate policies and procedures" and his uncorroborated statements about his own SM experience do not demonstrate that he is similarly situated to all Vitamin Shoppe SMs.[11]

Vitamin Shoppe's potential defenses also are individualized. Insofar as an SM claims, as Vasquez apparently would, that he or she does not predominantly perform exempt duties, Vitamin Shoppe may seek to establish through individualized proof that the SM is not fulfilling job expectations. See Ramirez v. Yosemite Water Co., 20 Cal. 4th 785, 802 (1999) (employee who is supposed to be engaged in exempt work cannot avoid exemption due to substandard performance). Also, a performance evaluation might reference exempt duties being performed

---

[10]   See also Reich v. Homier Distributing Company, Inc., 362 F. Supp. 2d 1009 (N.D. Ind. 2005) (finding individualized inquiries necessary to determine applicability of exemption, so FLSA collective action certification inappropriate); Odem v. Centex Homes, No. 3:08-CV-1196-L, 2010 U.S. Dist. LEXIS 9496 (N.D. Tex. Feb. 3, 2010) (refusing to certify class of field managers because duties would vary by manager, making the proposed class unmanageable).

[11]   Vasquez's reliance on Gjurovich v. Emmanuel's Marketplace, Inc. is misplaced. (Pl. Mem. at 8-9.) In Gjurovich, the court authorized notice to be sent to employees working at the *one* store at which plaintiff worked and where plaintiff had *specifically identified employees* who held the same or similar positions. 282 F. Supp. 2d 101, 104 (S.D.N.Y. 2003).

by such an SM in contradiction to his or her testimony.[12]  This type of documentary evidence only exists on an individualized basis and requires fact-intensive inquiry.

        4.      In the Absence of a Common "Illegal" Plan or Policy, Vasquez's Proposed Collective Action Is Unmanageable.

       The main benefit of a collective action as two-fold:  it gives plaintiffs the advantage of lower individual costs to vindicate rights via pooling of resources and allows an efficient resolution in one proceeding of common issues of law and fact arising from the same alleged activity.  Hoffman-LaRoche, 493 U.S. at 170.  Whether these benefits are available depends on manageability.  See Severtson v. Phillips Beverage Co., 137 F.R.D. 264, 266 (D. Minn. 1991) ("as a matter of sound case management, a court should, before [authorizing notice] make a preliminary inquiry as to whether a manageable class exists").  These policy considerations do not support notice here.

       First, the FLSA is a fee-shifting statute, so that an individual FLSA plaintiff can recover attorneys' fees and costs if successful.  Based on Vasquez's allegation that he worked from 45 to 58 hours per week for a period of approximately 60 weeks, this is not a case involving a small increment of allegedly unpaid time.  The relative value of his claim or that of any other SM does not depend on pooling to secure legal representation.

       Second, converting this matter to a collective action will not result in efficient resolution.  Based on Vasquez's theory of liability, adjudication of a proposed collective action would require inquiry into each putative claimant's day-to-day job performance to determine exempt

---

[12] Vasquez's own Declaration calls into question his credibility.  On the one hand, he asserts that he was responsible for, *inter alia*, store security, handling customer complaints and assigning work duties to Sales Associates, and that he participated in monthly meetings attended *only* by Store Managers, at which the SMs discussed "sales goals," individual store sales and financial performance, "new planograms and sales strategies."  On the other hand, Vasquez denies exercising any managerial responsibility or oversight.  (Ex. G, Vasquez Decl. ¶¶ 11-12.)

status.  See Sheffield v. Onus Corp., 211 F.R.D. 411, 413 (D. Ore. 2002) (denying certification where "each claim would require extensive consideration of individualized issues" and "be mired in particularized determinations of liability and damages, rather than collective consideration of common questions of law and fact"); see also Aquilino v. Home Depot, U.S.A., Inc., 2011 U.S. Dist. LEXIS 15759 (D.N.J. Feb. 15, 2011) (decertifying opt-in class where "variations are evident in the type of exempt work that the Opt-Ins performed, the extent of the Opt-In MASMs' authority over subordinate employees, and the amount of time that the Opt-Ins spent performing exempt work").  If the parties must establish a personal record for each opt-in plaintiff, the issues raised by this case cannot be managed collectively.

## IV.   CONCLUSION

Vasquez's allegations regarding his individualized circumstances do  not make a "modest factual showing" that he is similarly situated to a purported nationwide class of SMs.  Because Vasquez's theory of liability hinges on his singular experience and is not based on any uniform policy binding together his asserted class, and because he has offered no evidence that those he seeks to represent are similarly situated to him, his motion for conditional certification should be denied.

Respectfully submitted,


s/ Erica L. Clarke
Gary D. Shapiro
LITTLER MENDELSON, P.C.
900 Third Avenue
New York, NY  10022.3298
212.583.9600

*Admitted Pro Hac Vice:*
Terrence H. Murphy
Erica L. Clarke
LITTLER MENDELSON, P.C.
625 Liberty Avenue, 26th Floor
Pittsburgh, PA  15222
412.201.7600

Attorneys for Defendant
    VITAMIN SHOPPE INDUSTRIES, INC.

Date:  May 4, 2011

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on May 4, 2011, I served the foregoing Defendant's Opposition to

Plaintiff's Motion for Conditional Certification of a Collective Action on the following by

filing it electronically with the Clerk of Court for the United States District Court for the

Southern District of New York using its CM/ECF system, upon:

William C. Rand
Law Office of William Coudert Rand
711 Third Avenue, Suite 1505
New York, NY  10017

Jeffrey M. Gottlieb
Dana L. Gottlieb
Gottlieb & Associates
150 E. 18th Street, Suite PHR
New York, NY  10003


<u>s/ Erica L. Clarke</u>
Erica L. Clarke